UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| HOTEL, RESTAURANT & CLUB EMPLOYEES AND BARTENDERS UNION, LOCAL 6,<br><br>            Petitioner,<br><br>   v.<br><br>PRINCETON CLUB OF NEW YORK,<br><br>            Respondent. | Case No.<br><br>**PETITION TO CONFIRM**<br>**LABOR ARBITRATION AWARD** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Petitioner Hotel, Restaurant & Club Employees and Bartenders Union, Local 6 ("Union") Union petitions this Court for an order confirming a labor arbitration award against Princeton Club of New York ("Princeton Club"), issued by the parties' contractual industry arbitrator on December 17, 2021. The Union alleges as follows:

1. The award, numbered 2021-93 ("Award"), ordered Princeton Club to post a bond to secure contractual severance payment obligations to its terminated employees.

2. The Award draws its essence from the parties' collective bargaining agreement and its expansive arbitration clause, there are no valid grounds to vacate the Award, Princeton Club failed to timely move to vacate the Award, and Princeton Club refuses to comply with the Award. Accordingly, for the reasons set forth below, in the accompanying Declaration of Alyssa Tramposch, in the accompanying memorandum of law, and on all other papers filed in this action, this Court should confirm the Award.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action to confirm a labor arbitration award pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Case 1:22-cv-02443-CM   Document 1   Filed 03/25/22   Page 2 of 9

4. Venue is proper in this judicial district pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1391. The Union and Princeton Club maintain their principal places of business in this judicial district, the Award was rendered in this judicial district, and underlying events giving rise to the Award occurred in this judicial district.

## PARTIES

5. The Union is a labor organization within the meaning of Section 2(5) of the LMRA, 29 U.S.C. § 152(5). The Union's principal office is located at 709 Eighth Avenue, New York, NY 10036.

6. Princeton Club is an employer within the meaning of Section 2(2) of the LMRA, 29 U.S.C. § 152(2). The Princeton Club is located at 15 West 43rd Street, New York, NY 10036.

## STATEMENT OF FACTS

7. Princeton Club maintains and operates a private membership club in Midtown Manhattan open to individuals associated with Princeton University. Among other amenities, Princeton Club offers dining, fitness, and lodging.

8. The Union is the exclusive bargaining representative of all Princeton Club employees, excluding executive, office, and clerical workers.

9. The Union and Princeton Club were parties to a collective bargaining agreement governing the covered employees' terms and conditions of employment, which was extended by successive memoranda agreements through December 31, 2021 ("CBA").

**The CBA**

10. Among other provisions, the CBA establishes living wages (Article V), vacation pay (Article VI), holiday pay (Article VIII), various welfare benefits (Articles X and XVIII), and

{00695994-1}                                    2

secure retirement benefits (Article XIX).  The CBA also contains a successorship clause, requiring the binding of successors and assigns to the agreement's terms (Article XVI).

11. Article XI of the CBA requires Princeton Club to make severance payments as follows: "Any employee with two (2) or more years of service with the Employer who is permanently laid off owing to a decline in business, shall receive one (1) week's severance pay for each full year of employment."

12. To resolve disputes under the agreement, the parties incorporated the grievance and arbitration procedure from the Industry-Wide Agreement ("IWA") between the New York Hotel and Motel Trades Council, AFL-CIO and the Hotel Association of New York City, Inc.

13. The IWA contains the broadest possible arbitration language in Article 26(A), mandating that any and all disputes between the parties, including arbitrability, be decided exclusively by the Impartial Chairperson, a permanent industry arbitrator.

14. IWA Article 26(A) provides, in relevant part:

> All complaints, disputes or grievances arising between the parties hereto involving questions or interpretation or application of any clause of this Agreement, or any acts, conduct or relations between the parties, directly or indirectly, which shall not have been adjusted by and between the parties involved shall be referred to a permanent umpire(s) to be known as the Impartial Chairperson, and his/her decision shall be final and binding upon the parties hereto. Any questions regarding arbitrability, substantive, procedural, or otherwise, or regarding the Impartial Chairperson's jurisdiction or authority, shall be submitted to the Impartial Chairperson in accordance with this Article.

15. Under the very broad arbitral authority of the Office of the Impartial Chairperson ("OIC"), all disputes of any nature have been resolved peacefully, without labor strife, and with only limited litigation.

**Princeton Club Closed but Failed to Meet its Legal and Contractual Obligations**

16. In October of 2021, following reports of a potential sale of the Princeton Club, the Union requested and Princeton Club provided calculations for severance pay due to qualifying employees. Princeton Club calculated severance in the amount of $1,134,161.42.

17. Shortly thereafter, Princeton Club closed, laying off all of its remaining Union-represented employees.

18. At the time of these layoffs, Princeton Club provided no indication to the Union when or if it would ever reopen.

19. Princeton Club did not issue employees advance notice of the closing, pursuant to either the federal or New York State Worker Adjustment and Retraining Notification ("WARN") Acts.

20. Despite its obligations under the CBA, Princeton Club did not make severance payments to its terminated employees.

**Princeton Club Defaulted on its Mortgage and Union Demanded Arbitration**

21. Around the beginning of November, the Union learned that Princeton Club had defaulted on $39.3 million dollars of mortgage debt owed to Mortgagee Sterling National Bank ("Sterling"). The Union also learned that Sterling enlisted Newmark Group Inc. ("Newmark") to hold a blind auction of its mortgage note with Princeton Club, with final bids due November 18 and closing allegedly scheduled for November 29.

22. The Union understood that a purchaser could immediately foreclose and seize the Princeton Club's assets as a result of the default. In such circumstances, the Union may not be able to hold the purchaser responsible for employee benefits owed under the CBA and Princeton Club may not have the financial capability to make the employees whole.

23. On November 8, the Union submitted another information request to Princeton Club, seeking details about the auction as well as Princeton Club's application of the CBA's successorship clause to a prospective purchaser. The Union also asked whether and when Princeton Club intended to reopen and recall bargaining unit employees. The Union requested a response by November 12.

24. Having received no response, on November 17, the Union demanded an arbitration hearing before the OIC concerning Princeton Club's violation of the CBA, by, *inter alia*, failing to provide information and failing to issue WARN notices. The Union requested relief, including but not limited to the posting of a bond.

25. Following the Union's arbitration demand, Princeton Club belatedly issued WARN notices on November 19, stating that the workers would be terminated effective January 1, 2022. The WARN notice claimed that the terminations were caused by the financial effects of COVID-19. Princeton Club reported that it hoped its closure was temporary, "but, sadly, it may be permanent."

26. Also on November 19, Princeton Club responded to the Union's November 8 request for information. Princeton Club provided no assurance that it would require a prospective purchaser of the note to be bound by the CBA, instead contending that "a number of conversations [would] have to take place" in the event of a purchaser's foreclosure. This suggested to the Union that amounts due to employees under the contract, including severance payments, may become unrecoverable.

27. The same day, the Union requested the OIC schedule an emergency hearing based on Princeton Club's lack of assurances to the Union that a note purchaser would be bound by the CBA and that severance would be paid to the permanently terminated workers.

**The Arbitration Award Ordered a Bond Posting**

28. The Union and Princeton Club presented their respective positions by evidence and argument to Impartial Chairperson Philip J. Kellett in an emergency hearing on November 24. At hearing, Princeton Club requested and was granted an adjournment, alleging that it would know the identity of the purchaser of the mortgage and have insight as to the implications of the sale in early December.

29. The parties agreed to a second hearing date of December 10. At hearing on December 10, however, Princeton Club remained unable to identify the purchaser.

30. On December 16, the Union emailed a Proposed Union Order to Impartial Chairperson Kellett, requesting a bond to secure severance payments to employees. The Union requested a bond in the amount of Princeton Club's October severance calculations.

31. On December 17, Impartial Chairperson Kellett issued Interim Order #2021-93. A copy of the Award was served by email from Josephine Barletta, Assistant IC Administrator, to Princeton Club that day.

32. After reciting the issue, Impartial Chairperson Kellett determined that Princeton Club was the owner of property secured by a mortgage, for which it was in arrears. He further found that the mortgagee was in the process of securing a purchaser of its rights on the mortgage.

33. Impartial Chairperson Kellett summarized the parties' arguments from their presentations at hearing. He explained that Princeton Club argued, "so far as it can ascertain," that sale of the mortgage note would not disturb or impair its ability to comply with the CBA. Kellett noted that "[i]n essence, the Employer argues that the facts have not ripened into any demonstratable failure to comply with its contractual obligations. . . ."

34. Impartial Chairperson Kellett next summarized the Union's position, which was that it was seeking to enforce the CBA and applicable law. Specifically, Kellett identified Union allegations that Princeton Club had: (A) failed to provide information about the bargaining unit; (B) failed to issue WARN notices; (C) failed to remit severance pay and other payments due to employees and the Union under the CBA upon Princeton Club's closure; and (D) failed to comply with the CBA's successorship clause.

35. After recounting the parties' respective positions, Impartial Chairperson Kellett ordered as follows:

> 1. The Club shall forthwith post a bond with the Office of the Impartial Chairperson in the amount of One Million One Hundred Thirty-Four Thousand One Hundred Sixty-One Dollars and Forty-Two Cents ($1,134,161.42) to secure its obligations to bargaining unit members.
>
> 2. Either party may make an application to the Impartial Chairperson to adjust the amount of the ordered bond upwards or downwards.
>
> 3. The Union reserves all other rights and claims under the New York State WARN Act and the Collective Bargaining Agreement with the Club ("CBA").
>
> 4. The Union may make application to the Impartial Chairperson to draw down the bond to pay any obligations due bargaining unit members subject to an evidentiary arbitration hearing and order from the Impartial Chairperson.
>
> 5. The Impartial Chairperson retains jurisdiction over the instant arbitration and any matters arising from the issuance of this order including but not limited to any argument sounding in law or equity bearing on the ability of the Employer to procure the aforementioned bond.
>
> 6. This order will be effective as of the close of business on December 17, 2021 absent a request from the Union to stay the same.

**Princeton Club Failed to Comply with the Award**

36. To date, though duly demanded, Princeton Club has failed and refused, and continues to refuse, to post a bond in accordance with the Award.

37. To date, Princeton Club has made no application to the Impartial Chairperson to adjust the bond.

38. The Award has not been vacated by order of any court of competent jurisdiction and is still in full force and effect.

39. The Award draws its essence from the CBA.

40. There is no basis in law, fact, or equity to vacate the Award.

41. The time for Princeton Club to move to vacate the Award has passed.

42. No prior application for the relief requested herein has been made to this or any other court or judge.

## **REQUEST FOR RELIEF**

**WHEREFORE**, for the reasons and upon the authority set forth herein, in the Declaration of Alyssa Tramposch, the Union's accompanying memorandum of law, and all papers filed in this action, the Union respectfully requests an order be made and entered:

a) Granting the Petition and the Union's motion to confirm the Award and ordering compliance therewith;

b) Granting such other equitable and further relief this Court deems fair and appropriate.

Dated: New York, New York
March 25, 2022

                                              PITTA LLP
                                              *Attorneys for Petitioner Union*

By: _____/s_____
Andrew D. Midgen
(amidgen@pittalaw.com)
Barry N. Saltzman
(bsaltzman@pittalaw.com)
120 Broadway, 28th Floor
New York, NY  10271
Telephone:  212-652-3890
Facsimile:   212-652-3891